# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**RICARDO MARTINEZ-PORTE,**

    **Plaintiff,**

              **Case No. 1:22-cv-768**

    **v.**           **JUDGE DOUGLAS R. COLE**

**MULTI-COLOR CORPORATION,**
***et al.,***

    **Defendants.**

## OPINION AND ORDER

Plaintiff Ricardo Martinez-Porte, a Mexican citizen, has sued two American corporations—Defendants Multi-Color Corporation, a Delaware corporation whose principal place of business is in Ohio, and W/S Packaging Group, Inc. (WSPG), a Wisconsin corporation[1]—over a corporate dispute that arose in Mexico. In particular, the two American corporations are alleged to be either direct or indirect shareholders in WS Packaging Mexico, S.A. de C.V. (WSMEX), a Mexican corporation, in which Martinez-Porte was also a shareholder and the chief executive. (Am. Compl., Doc. 10,

---

[1] As explained further below, Martinez-Porte claims that WSPG is no longer an entity with corporate personhood due to a purported merger between Multi-Color and WSPG. (Doc. 10 ¶ 52, #287). Yet, in his Complaint, Martinez-Porte alleged that WSPG is "a corporation incorporated under Wisconsin law" that "purport[s] to do business" from a street address located in Wisconsin. (*Id.* ¶ 24, #282). Further shifting the goal posts, Martinez-Porte has since contended that WSPG is domiciled in Ohio based on a 2022 stock certificate attached to his Amended Complaint. (Doc. 13, #707, 710 n.6 (citing Doc. 10-6, #369)). That WSPG once purportedly had an address in Ohio and is claimed to be subject to personal jurisdiction here does not conflict with the allegation in Martinez-Porte's complaint that WSPG is incorporated and has its principal place of business in Wisconsin. As a result, at this stage in the litigation, the Court accepts as true the allegation that WSPG calls Wisconsin its corporate home. *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707–08 (6th Cir. 2021) (explaining that at the motion-to-dismiss stage, an "exhibit trumps the allegations" only to the extent that the contradiction "render[s] the[ allegations] implausible" (citation omitted)).

#276–82). Using (or misusing) their shareholder powers in Mexico, Defendants allegedly ousted Martinez-Porte from WSMEX. (*Id.*). Martinez-Porte argues that their actions violated WSMEX's by-laws and applicable Mexican corporate law, constituted unjust enrichment, and resulted in conversion of WSMEX's assets. (*Id.* at #311–16).

Defendants have now moved to dismiss Martinez-Porte's Amended Complaint. (Doc. 12). They contend that the Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, that the Court should dismiss the action under the common law doctrine of forum non conveniens because Martinez-Porte's suit should be heard in Mexico. (*Id.* at #379).

As further explained below, the Court agrees with Defendants on the forum non conveniens front. Martinez-Porte's suit is better heard in Mexico, where the facts giving rise to this suit occurred, rather than in an Ohio court foreign to the dispute. And because the Court dismisses the suit on forum non conveniens grounds, the Court declines to opine on whether Martinez-Porte has failed to state a claim— whether under Mexican, Ohio, or any other applicable law. Thus, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 12) pursuant to the doctrine of forum non conveniens and **DISMISSES WITHOUT PREJUDICE** Martinez-Porte's Amended Complaint (Doc. 10).

## BACKGROUND[2]

Martinez-Porte started the earliest iteration of WSMEX some thirty-five years ago as a wholly owned printing label company located and operating in Mexico. (Doc. 10 ¶¶ 29–32, #282–83). As part of his plan to expand WSMEX's operations, Martinez-Porte sold 60 percent of the corporation's shares to an outside investor in 1995. (*Id.* ¶¶ 33–34, #283). In connection with that sale, he created by-laws and a board of directors to govern WSMEX's future operations and to balance the interests of its majority and minority shareholders. (*Id.* ¶¶ 35–39, #284).

That 60 percent majority interest has changed hands over the years. (*Id.* ¶ 40, #284–85). Part of the dispute before the Court centers on who is the most recent owner and what corporate identities remain after a disputed merger involving the 60 percent shareowner. (*Id.*; Doc. 12, #389–90). According to Martinez-Porte, one of the defendants here, WSPG, obtained the 60 percent interest in WSMEX in 2008. (Doc. 10 ¶ 40, #284–85). And he further alleges that the interest transferred to Multi-Color in 2019 via a merger between Multi-Color and WSPG orchestrated by a company named Platinum Equity. (*Id.* ¶¶ 40, 44–56, #285–93). According to Martinez-Porte,

---

[2] Normally, when a matter is before the Court on a motion to dismiss, the Court must accept the allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But with respect to motions to dismiss pursuant to forum non conveniens, the Court is not limited to just the allegations in the Complaint and may "consider materials outside the complaint," such as affidavits and declarations submitted by the parties. *Mallory v. Am. Mgmt. Ass'n Int'l*, No. 3:13-cv-379, 2014 WL 12676180, at *4 & n.6 (E.D. Tenn. May 19, 2014) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009), and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981)). So in reporting the background here, in light of the Court's decision to dispose of this motion on forum non conveniens grounds, the Court relies on both the allegations in the Complaint (with the caveat that they are just that—allegations) and, where expressly noted, the several affidavits and declarations submitted by the parties as exhibits to their papers.

this merger between WSPG and Multi-Color destroyed WSPG's separate corporate existence, and instead transformed it in a business unit operating within Multi-Color without a separate corporate identity. (*Id.* ¶ 52, #287).

Defendants say that is not so. First, they contend that WSPG did not obtain the 60 percent ownership interest in WSMEX in 2008. Rather, they say that WSPG obtained it in 2019. Second, they say WSPG did not buy the interest directly from WSMEX or Martinez-Porte, but rather became the shareholder when WSPG merged with a separate entity named Wisconsin Label Corporation, which owned the WSMEX shares at the time of the merger. (Doc. 12, #389 n.3 (citing Doc. 12-1, #420–21)). Finally, Defendants cite SEC filings related to the merger Martinez-Porte highlights in his Amended Complaint (allegedly between WSPG and Multi-Color) to argue that it was WSPG's *parent corporation* (similarly named W/S Packaging Holdings, Inc.)—not WSPG itself—that merged with Multi-Color. (Doc. 12, #390–91 (citing Docs. 12-2, 12-3)). As a result of that merger, WSPG (which owns the WSMEX shares) became a wholly-owned subsidiary corporation of Multi-Color. (*Id.* at #386). But as a subsidiary, Defendants claim WSPG continues to exist and to conduct business as a separate corporate entity. (Doc. 12, #391; Doc. 12-5, #448). And it is that separate corporate entity, or so Defendants claim, that owns the majority interest in WSMEX—not Multi-Color.[3] (Doc. 12, #389–91).

---

[3] This dispute over the corporate ownership of the majority interest in WSMEX and Multi-Color's corporate structure is one example of the myriad factual challenges to Martinez-Porte's allegations that Defendants mount in their motion to dismiss using public records and other extrinsic evidence attached to their motion. (Docs. 12-1 to 12-14). These factual

Martinez-Porte claims his woes began after Multi-Color's alleged 2019 acquisition of the majority interest in WSMEX. Specifically, he alleges that Multi-Color through WSPG (which, as noted above, he contends merged with Multi-Color and no longer retains a separate corporate identity) attempted to close WSMEX so Multi-Color could consolidate WSMEX's operations with its own wholly-owned Mexican subsidiary, Multi-Color Label Corporation-México, S.A. de C.V. (MCM). (Doc. 10 ¶¶ 46, 57, #286, 293). To accomplish this, Martinez-Porte alleges that Defendants sought to dilute his shares in WSMEX by unilaterally (i.e., via resolutions

---

disputes serve as the primary basis for Defendants' contention that Martinez-Porte failed to state a claim upon which relief may be granted in his Amended Complaint.

But there is a central problem with this approach: this case comes before the Court at the motion-to-dismiss stage. So, with respect to their argument that the Amended Complaint must be dismissed pursuant to Rule 12(b)(6), the Court "must construe the complaint in the light most favorable to the plaintiff, [while] accept[ing] all [well-pleaded] factual allegations as true." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). Admittedly, the Court may take judicial notice of the *existence* of public records and reject any "factual allegations that are [thereby] contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021). But the Court may not rely on the contents of those records unless the facts are "not subject to reasonable dispute" and the records are "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Passa v. City of Columbus*, 123 F. App'x 694, 697–98 (6th Cir. 2005). At times, "there is no distinction [] between the fact of the document's existence and its content," such as when a party files an amendment to change the name of a limited liability company. *Morse v. Fifty W. Brewing Complany, LLC*, No. 1:21-cv-377, 2022 WL 974342, at *3–*4 (S.D. Ohio Mar. 31, 2022) (typographical error in defendant's name in the caption in the original). But just because documents are public records does not put them beyond reproach—such filings may contain misrepresentations. Namely, that they are publicly filed does not authenticate or warrant the truth of their contents. *Passa*, 123 F. App'x at 698 (noting that accepting the contrary position would "eviscerate all sorts of fraud … and other laws requiring investigations into [a party's] motives"); *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 875–76 (E.D. Tenn. 2005) ("It would be improper for the Court to rely upon these documents [including several SEC filings] to determine disputed factual issues and by taking judicial notice of these documents at this time the Court in no way intends to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents themselves."). At any rate, the resolution of this issue has little effect on the Court's disposition because as explained below, the Court finds that dismissal is proper for forum non conveniens.

adopted at a shareholder meeting that neither Martinez-Porte nor his proxy attended) authorizing additional shares to issue to Defendants, purportedly to pay for debts WSMEX incurred for equipment. (*Id.* ¶¶ 58–61, #293–94). But Martinez-Porte claims this scheme failed to guarantee Defendants the supermajority of WSMEX's shares they needed to authorize actions to injure Martinez-Porte's minority interest in the company. (*Id.* ¶ 61, #294). So, Martinez-Porte alleges, Defendants tried other tactics to achieve that goal. These purportedly included firing him as the president and chairman of WSMEX, barring him from all physical access to the company, accusing him of stealing from WSMEX, and making allegedly false representations aimed at pressuring him to sell his shares to Defendants at a steep discount. (*Id.* ¶ 62, #294). And Martinez-Porte contends that despite failing to obtain ownership of his shares, Defendants unilaterally shuttered WSMEX's doors in late 2020, which purportedly resulted in laying off employees and Defendants' physical appropriation of WSMEX's plant, machinery, and other business materials.[4] (*Id.* ¶¶ 84–85, 87–88, #300, 302).

---

[4] Not surprisingly, and as previewed above, *see supra* note 3, Defendants present a comprehensive counternarrative to explain away this damning fact pattern. For example, Defendants claim that Martinez-Porte falsified a loan, which resulted in his termination and removal from the premises. (Doc. 12, #391). Defendants also claim that rather than pressure Martinez-Porte to sell his shares, Martinez-Porte himself launched the process to "[c]ash-in" on the Platinum Equity merger and to sell his shares at what Defendants contend was a supra-market rate. (*Id.* at #391–93). And Defendants claim that WSMEX was a failing business that had to be closed because it was hemorrhaging money and because it lost its biggest client in 2020. (*Id.* at #392–93). This is all well and good as a story to tell through evidence obtained during discovery on a motion for summary judgment. But the Court struggles to see how Defendants can piece together this storyline by relying solely on the well-pleaded factual allegations in the complaint construed in the light most favorable to Martinez-Porte, *In re DeLorean Motor Co.*, 991 F.2d at 1240, coupled with any judicially noticeable documents containing facts of which there can be no reasonable dispute, *Passa*,

6

As a result of these actions, Martinez-Porte evaluated his legal options. He first sought discovery in this Court pursuant to 28 U.S.C. § 1782, which enables foreign parties to obtain discovery materials for use in foreign proceedings. In support of that request, he said he intended to pursue "reasonably contemplated Mexican proceeding[s] under Mexico's criminal … [and] civil and labor laws." *Ex parte* Appl. at 1, *In re Ricardo Martinez-Porte*, No. 1:21-mc-6 (S.D. Ohio June 2, 2021) (Barrett, J.), ECF No. 1. On July 5, 2021, this Court granted his application permitting him leave to serve Multi-Color a subpoena for discovery materials to assist his contemplated foreign suits. Order, *In re Ricardo Martinez-Porte*, No. 1:21-mc-6 (S.D. Ohio July 5, 2021), ECF No. 3. Having succeeded in obtaining some materials for a foreign action, Martinez-Porte changed course. Rather than pursue the contemplated foreign suits, he filed this domestic lawsuit on December 27, 2022, initially naming only Multi-Color as a defendant. (Compl., Doc. 1; Doc. 13, #711).

Multi-Color moved to dismiss the Complaint for failure to state a claim and under the doctrine of forum non conveniens. (Doc. 9). Rather than respond, Martinez-Porte amended his complaint, now naming both Multi-Color and WSPG as defendants liable for the allegedly unlawful corporate ouster. (Doc. 10). Defendants moved to dismiss on the same grounds that Multi-Color had pressed in its first

123 F. App'x at 697–98, for the purposes of their argument that the Amended Complaint fails to state a claim upon which relief may be granted. Given that Martinez-Porte's account of events in his Amended Complaint conflicts with nearly all material details Defendants proffer, this would be a tall order indeed. (*Compare* Doc. 12, #389–93 *with* Doc. 13, #703–07). Nevertheless, as noted above, this factual contest matters not to the Court's analysis here, as the Court finds that this case should be dismissed under the doctrine of forum non conveniens and should be filed instead in Mexico where the relevant events occurred.

motion. (Doc. 12). Martinez-Porte filed his opposition, (Doc. 13), and Defendants replied, (Doc. 16). The Court held oral arguments on the motion on October 19, 2023. (10/19/23 Min. Entry).

The matter is now ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In making that determination, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

The doctrine of forum non conveniens, on the other hand, is a common law doctrine which permits "a district court [to] decline to exercise its jurisdiction, even though the court has jurisdiction and venue." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (citation omitted). "In deciding whether to dismiss a case on this basis, 'the central focus' is 'convenience.'" *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 658 (6th Cir. 2021) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)). A court must evaluate three factors: "(1) whether an adequate alternative forum is available; (2) whether a balance of private and public interests suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court; and (3) the amount of deference to give the plaintiff's

choice of forum." *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019). "The defendant bears the burden of proof on all elements of the forum non conveniens analysis." *Stalinski v. Bakoczy*, 41 F. Supp. 2d 755, 758 (S.D. Ohio 1998). But in deciding whether the defendant has carried its burden of proof, the Court can consider not only the pleadings but also affidavits and other evidentiary materials that the parties supply. *Mallory v. Am. Mgmt. Ass'n Int'l*, No. 3:13-cv-379, 2014 WL 12676180, at *4 & n.6 (E.D. Tenn. May 19, 2014) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009), and *Piper Aircraft*, 454 U.S. at 259).

## LAW AND ANALYSIS

Although Defendants moved to dismiss on alternate grounds, the Court begins with their forum non conveniens argument. As explained further below, the Court finds that Defendants have shown that all three factors favor a dismissal. This suit is better prosecuted in Mexico rather than in Ohio. Because this ruling disposes of the pending motion, the Court declines to evaluate Defendants' argument that Martinez-Porte's Amended Complaint should be dismissed for failure to state a claim. *Stalinski*, 41 F. Supp. 2d at 758 n.2.

### A. Adequate Alternative Forum

Because a dismissal under the doctrine of forum non conveniens "say[s] that the case should be tried elsewhere," this first factor requires assessing whether there is an alternate forum for the litigation that is "both available and adequate." *Jones*, 920 F.3d at 1090.

"An alternative forum is available if the defendant is amenable to process there." *Id.* at 1091. Although somewhat evasive in their briefing, Defendants acknowledged "that both entities are subject to service of process" according to the procedure referenced by Martinez-Porte's own expert. (Doc. 16, #861–62). And, in response to the Court's questioning at oral argument, Defendants clarified that they were amenable to suit in Mexico, that they were waiving any jurisdictional objection to litigation in Mexico, and that they would accept process in such a court with respect to this matter. Beyond that, Defendants also acknowledged in their reply brief and at oral argument that the Court is free to order Defendants to waive any objections they have to jurisdiction, venue, and service of process in Mexico as part of granting a motion to dismiss on forum non conveniens grounds. (Doc. 16, #862 n.8). *See also Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 336 (6th Cir. 2001); *accord Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.* (*Instituto I*), 518 F. Supp. 3d 1258, 1264–65 (N.D. Ind. 2021) (noting that courts can require a defendant to consent to the jurisdiction of the alternate forum and that "Mexican courts recognize consents to jurisdiction"). Accordingly, out of an abundance of caution, the Court will do so here. With that, availability is not an issue.

Turning to adequacy, "[a] forum is adequate if it can remedy the alleged harm." *Jones*, 920 F.3d at 1091. To start, Martinez-Porte brought two Mexican-law claims, which are clearly cognizable in Mexican courts. *Instituto I*, 518 F. Supp. 3d at 1265 (noting that the contract claims raised by the plaintiff were both "asserted under Mexican law, so any remedy would be available in Mexico" and quoting the

professional opinion of a former associate justice of the Mexican Supreme Court agreeing with that position); *see S.R.J. v. Marriott Int'l, Inc.*, No. 2:21-cv-1863, 2022 WL 11306888, at *3 (W.D. Pa. Oct. 19, 2022) (quoting the affidavit of a Mexican attorney who represented to the court that "there is no question that Mexico has expressed a sovereign interest in having Mexican laws govern situations … that occur within its territory"). And while Martinez-Porte raises unjust enrichment and conversion claims—purportedly under Ohio common law[5]—he concedes that Mexican law recognizes similar legal claims. (Doc. 13, #726–27 (citing Doc. 12-12, #603 and *Banco de Mexico v. Orient Fisheries, Inc.*, 680 F. Supp. 2d 1132, 1147 (C.D. Cal. 2010) (recognizing similarities between unjust enrichment claims and Mexican "illegitimate enrichment" claims)); Doc. 13-1, #762). This is more than enough to demonstrate that a remedy in Mexican court is adequate—that is to say, remedies for the claims raised are available to Martinez-Porte in the courts there. *Piper Aircraft*, 454 U.S. at 254 (explaining that a forum is inadequate if there is "no remedy at all" available to the plaintiff).[6]

---

[5] The parties vehemently dispute whether, under the Ohio conflict-of-law principles that this Court must apply, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), Martinez-Porte has properly raised Ohio law claims. (*Compare* Doc. 12, #409–11 *with* Doc. 13, #726–30). The Court declines to delve into this dispute and the merits of the parties' competing positions. The sole reason for highlighting the existence of Mexican law claims akin to unjust enrichment and conversion is to explain why it is clear Martinez-Porte would have an adequate remedy available in a Mexican court should he bring suit in that forum.

[6] Or as one court aptly put it, "[j]ust because Mexican law or a Mexican court may prove more circumspect about the claims here is a measure of the merits, a measure of standards or weight, not a measure of whether the remedies would be so clearly inadequate such as to be no remedy at all." *Instituto I*, 518 F. Supp. 3d at 1265.

In his briefing, Martinez-Porte countered that Mexico was not an adequate alternate forum for reasons that touched on both its availability and its adequacy. As to the former, he argued that "Defendants failed to make any [] declaration" that they were amenable to suit in Mexico. (Doc. 13, #711–12). And as to the latter, he asserted that Defendants have not *proved* that Mexico is an adequate alternative. But, when the Court discussed these factors at oral argument, Martinez-Porte's counsel conceded he no longer contested this first prong of the forum non conveniens analysis.

Counsel was correct to abandon any such argument. As to the assertion in his briefing about Defendants failing to prove that relief would be available, Defendants cited caselaw in their briefing to support their claim that Martinez-Porte would have remedies available in Mexico for each of his claims. (Doc. 16, #861). But beyond that, and as Martinez-Porte's counsel also conceded at oral argument, the adequacy of remedies is readily apparent from the fact that Martinez-Porte either raised Mexican law claims or expressly admitted Mexican law recognized similar causes of action to the non-Mexican law claims raised in his complaint. *Cf. Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.* (*Instituto II*), 29 F.4th 351, 358–59 (7th Cir. 2022) (finding that the plaintiff's failure to "assert [that] a remedy is impossible in Mexican courts, merely that it is less likely," supported a finding that a Mexican forum was an adequate alternative given "two of [the plaintiff]'s causes of action ar[o]se under Mexican law and … the remedy for the third [wa]s identical in the United States and Mexico").

As to his contention about availability, which he based on Defendants' failure affirmatively to declare a willingness to accept service in their briefing, Martinez-Porte is wrong that such a declaration is required by law. *Wong*, 589 F.3d at 831 (explaining that there is no "case law which requires the district court to make specific findings on the issue" of amenability to process when conducting a forum non conveniens suit and holding that the district court's failure to do so could not constitute a per se abuse of discretion). But, in any event, during oral argument, Defendants expressly conceded their amenability to process in Mexico and the Court is making certain Defendants will be subject to the jurisdiction of the relevant Mexican court by ordering Defendants' compliance.

Thus, in accord with the parties' positions at oral argument, the Court finds that Mexico is an available and adequate alternate forum for this dispute.

## B. Balance of Public and Private Factors

Balancing the public and private factors for or against the current forum requires the Court to assess "whether the plaintiff's choice of forum is unnecessarily burdensome." *Jones*, 920 F.3d at 1092. The Court discusses each in turn.

### 1. Private Factors

The private factors ask the Court to consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). To make this determination, the

Court reviews "the substance of the dispute between the parties." *Hefferan*, 828 F.3d at 498 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)).

The substance of the dispute is clear from a plain reading of the Amended Complaint. Martinez-Porte is the former president and chairman of a Mexican corporation, WSMEX, who was ousted by WSMEX's shareholders purportedly in violation of WSMEX's by-laws and Mexican corporate law. (Doc. 10 ¶¶ 22, 62–70, 96–109, #282, 294–96, 304–09). And because of this allegedly illegal ouster, Martinez-Porte accuses Defendants of wrongfully shuttering WSMEX: in turn, laying off workers in Mexico, closing plant operations in Mexico, removing machinery and equipment from the Mexican facility, taking over client accounts that had been serviced from that Mexican facility, stealing other business materials from Mexico, and allegedly pilfering cash from WSMEX—again, monies originally held in Mexico. (*Id.* ¶¶ 87, 136–60, #302, 314–16). All factual roads clearly and unequivocally lead to Mexico. Moreover, on the legal front, the scope of the rights that WSMEX's shareholders possessed, and whether those rights allowed the shareholders to undertake the activities at issue, is a matter of Mexican law. And all the alleged harm occurred in that country. For example, as noted, the vast majority, if not all, of the allegedly wrongfully taken assets are in that country.[7] (*Id.* ¶¶ 87, 92, 104(b), 106(c),

---

[7] Yes, Martinez-Porte alleges that Multi-Color eventually moved monies in WSMEX's accounts to accounts Multi-Color controlled in the United States. (Doc. 10 ¶ 91, #302–03). But Martinez-Porte does not dispute that the other physical assets and client accounts were purportedly retained by Defendants through MCM in Mexico. (*Id.* ¶¶ 87, 92, 104(b), 106(c), 113(d), #302, 303, 307, 308, 310–11; Docs. 12-10, 12-11). And to the extent that Defendants made such transfers to the United States as Martinez-Porte alleges, any such records of the transfers would be available in Mexico with WSMEX's other corporate and financial records. (Doc. 10-5, #333, 341; Doc. 12-14, #659, 667).

113(d), #302, 303, 307, 308, 310–11; Docs. 12-10, -11). And Martinez-Porte was harmed, if at all, in his capacity as a president and chairman of a Mexican corporation, who worked in Mexico. Moreover, any resulting effect on the operations of WSMEX will undoubtedly manifest, at least as an initial matter, in Mexico.

So it stands to reason that relevant witnesses, evidence, and documentation necessary for Martinez-Porte to prove his case are likewise in Mexico. Indeed, Defendants provided a list of such materials and witnesses, including things such as WSMEX's power of attorney, Agustin Garza (who, as WSMEX's power of attorney, authorized the asset transfers), WSMEX's corporate records, and its shareholder registry, all of which appear to be located in Mexico. (Doc. 16, #863–64). *See also Lu v. SAP Am., Inc.*, No. 22-1253, 2022 WL 13983546, at *9 (6th Cir. Oct. 24, 2022) (holding that a Chinese citizen whose allegations of discrimination occurred at the hands of Chinese employees at a Chinese company in China supported a finding that the private factors weighed for litigation in China). Beyond that, many documents already proffered for the Court's review are Spanish language documents, which would require competent translations if this matter were to proceed here.[8] *Prevent USA*, 17 F.4th at 660 (holding that because "much of the evidence will be in German[,] … the German courts will be able to access these documents and witnesses far more conveniently than American courts could"). Considering the sources of proof

---

[8] Indeed, assessing the legal meaning of foreign terms, particularly in determining whether something constitutes a term of art, is especially difficult for a non-native speaker who is not steeped in the foreign law. *Cf. Martinez v. United States*, 828 F.3d 451 (6th Cir. 2016) (en banc) (a divided en banc court's attempting to construe a treaty's use of the phrase "lapse of time" to determine whether it constituted a legal term of art or incorporated the Speedy Trial Clause by reference).

and the practical problems this case presents, the Court concludes that the private factors favor litigation in Mexico.

Martinez-Porte counters primarily in two ways. First, he contends that the evidence is mostly located in the United States, not in Mexico. (Doc. 13, #713–14). To support this assertion, he argued at the hearing that there were three issues of fact relevant to his claims for relief that require obtaining evidence here in the United States. The Court addresses each of those below. Second, he objects that there are procedural difficulties in litigating in a Mexican forum. (*Id.* at #714–16). Neither argument has merit.

As to his claim that the evidence is largely in the United States, Martinez-Porte attempts to focus on aspects of this dispute that have a domestic connection, while minimizing the relevance of the impact and manifestation of this dispute in Mexico. (Doc. 10, #310 (alleging in a conclusory fashion that discovery "confirmed" Defendants "planned, directed, and/or executed" the closure of WSMEX from this District)). When pressed at oral argument, Martinez-Porte's counsel expanded on this argument by highlighting three factual disputes he believed were relevant to Martinez-Porte's claims and that exemplified the claimed domestic situs of this suit: (1) who WSMEX's majority shareholder is; (2) Defendants' intent regarding the shuttering of WSMEX; and (3) what quantum of damages Martinez-Porte suffered.

Take them in order. The alleged dispute about the identity of WSMEX's majority shareholder, which Martinez-Porte discusses at some length, strikes the Court as something of a red herring. (Doc. 13, #705–07, 713). Regardless whether

16

WPSG or Multi-Color owns the majority interest, Martinez-Porte's claims are premised on that shareholder's attempt to strong-arm him out of his ownership interest in WSMEX in violation of Mexican law and the applicable by-laws. And if the ouster was improper, it follows the transfer of WSMEX's assets to that shareholder—again, regardless who retains those shares currently—would likely constitute an illegal conversion of property, given the shareholder lacks proper title, thereby unjustly enriching the entity as a result. The disputed merger (and any accompanying transfer of the WSMEX majority shareholder ownership interest) will play a minimal role in Martinez-Porte's ultimate showing of proof. And even if necessary, the evidence needed to prove the shareholder's true identity is minimal: Martinez-Porte's own expert admits the "shareholder register"—a ledger that WSMEX must keep under Mexican law and is therefore likely located in Mexico with WSMEX's other corporate documents, (Doc. 10-5, #333, 341; Doc, 12-14, #659, 667)—is sufficient.[9] (Doc. 13-1, #754–55). So the dispute over which defendant owned WSMEX's shares does not support prosecution in this Court.

Next turn to Martinez-Porte's assertion that he must understand what motivated Defendants to shutter WSMEX. In his briefing and at oral argument, he contends that "[t]he documents revealing the circumstances that led" to his ouster from WSMEX and to the "clos[ure of] the WSMEX plant without authorization" are here in the United States because Defendants have a corporate presence in the United States. (Doc. 13, #713–14). Yes, Defendants are American corporations. And

---

[9] Importantly, Martinez-Porte has not argued—in his briefing or at oral argument—that there is evidence suggesting to the contrary that these documents are no longer in Mexico.

yes, they may have made some corporate decisions in the United States about their exercise of WSMEX shareholder rights, rights that were then executed in Mexico.[10] But so what? That does not negate the obvious: the core of Martinez-Porte's claims involves a Mexican corporation's dispute between its former president and its shareholders, the impact of which led to a shuttering its Mexican operations—a quintessentially Mexican-oriented dispute. *Hefferan*, 828 F.3d at 498 (finding that a products liability suit over a medical device that purportedly malfunctioned during a surgery in Germany would require evidence and witnesses that were predominantly in Germany). And Martinez-Porte's attempt to shoehorn this dispute into American courts simply by reference to the corporate headquarters of Defendants is a legal contention that has already been rejected by the Sixth Circuit when the *harm* manifests in the foreign country. *Id.* at 497–98 (explaining that even though the "design, application, and manufacture" that purportedly introduced a defect in the product occurred elsewhere, the relevant witnesses and evidence were in Germany where the alleged harm manifested).

---

[10] As the Court stressed on the record during oral argument, corporations are not physical people—their personhood is a matter of legal fiction, which means they are entities whose actions are executed through physical people at specific locations. As a result, Martinez-Porte's focus on Defendants' domicile in the United States carries little weight in the Court's analysis of the merits of his claims and where the evidence is present. The actions of Defendants that impacted Martinez-Porte and WSMEX in Mexico would have been executed by Defendants' agents *in Mexico*. In fact, Defendants highlighted at oral argument the evidence showing that Augustin Garza was the power of attorney who authorized the transfer of assets from WSMEX to MCM after the former's operations were shuttered, all in Mexico (Doc. 12-10, #560, Doc. 12-11, #569). And Martinez-Porte cannot meaningfully dispute that Garza's actions, which carried out the allegedly unlawful shareholder resolutions leading to his ouster from WSMEX, occurred in Mexico—he alleged as much in his own operative Amended Complaint. (Doc. 10 ¶ 53(h), #290).

A careful review of Martinez-Porte's Amended Complaint reveals that he acknowledges as much—he alleges that many of the relevant events and related documentation and witnesses are at least as connected to Mexico as the United States, if not more so. For example, the corporate retreat where he was purportedly pressured to sell his shares occurred in Cancun, Mexico. (Doc. 10 ¶ 47, #286). Upon WSMEX's closure, its assets were allegedly transferred to MCM, a Mexico-based corporation. (*Id.* ¶ 104(b), #307). Guards and WSMEX employees were allegedly instructed to prevent Martinez-Porte's *physical* access to its facilities—in Mexico. (*Id.* ¶ 67, #295). Martinez-Porte was purportedly the "boots on the ground" at WSMEX in Mexico. (*Id.* ¶ 79, #299). WSMEX's "audited financial statements" allegedly prove that it was profitable such that liquidation would be improper. (*Id.* ¶ 81, #299). And allegedly, no board meetings were held or requisite votes taken to authorize WSMEX's closure as required by its by-laws, which would be evident from the absence of these records in WSMEX's corporate minutes and related governance documentation, all of which is presumably maintained in Mexico. (*Id.* ¶¶ 96–99, #304). All of these events, which Martinez-Porte alleged in detail to bolster his claims that Defendants used their purported majority interest in WSMEX unlawfully to consolidate its economic power in, and impermissibly to terminate Martinez-Porte's access to, the Mexican printing label market, have a substantial nexus to Mexico. And as such, evidence of these events would be best accessed and proved in Mexico, not remotely in this Court.

Further buttressing this assessment that the relevant evidence is in Mexico, Defendants allegedly adopted the unlawful resolutions at shareholder meetings, meetings that the by-laws provide must be held *at WSMEX*'s *facilities*—Martinez-Porte makes no allegations to the contrary. (Doc. 10-5, #342; Doc. 12-14, #668). Any minutes from or resolutions adopted at these meetings were required by the by-laws to be held by the company in a corporate register—documents that no party has suggested WSMEX would have retained anywhere but in Mexico. (Doc. 10-5, #338–39, 341–42; Doc. 12-14, #664–65, 667). Simply, because Martinez-Porte's corporate law claims will ultimately turn on what transpired at these allegedly unlawful meetings, the relevant evidence has a Mexican, rather than American, situs, thereby undermining his claim to the contrary.

Martinez-Porte countered at oral argument that Defendants' *intent* mattered and that this intent would be proven through people and documents located at WPSG's or Multi-Color's corporate headquarters. But the Court struggles to find the necessity of proving such intent (other than perhaps to inflame the passions of the jury) when considering the allegations in his Complaint. Indeed, at oral argument, the Court specifically asked Martinez-Porte's counsel to identify any such allegations about Defendants' alleged intent. He could not do so. Nor is that particularly surprising. To prove his breach of the by-laws claims, Martinez-Porte need prove only whether Defendants took actions the by-laws prohibited—not why they took those actions. (Doc. 10 ¶¶ 119, 121–24, #312–13 (claiming Defendants needed to obtain a supermajority vote of the board to close WSMEX and did not do so)). Similarly,

showing that Defendants violated Mexican corporate law will require proof only that Defendants had a conflict of interest and that they took actions while subject to that conflict of interest—again, the underlying why is irrelevant. (*Id.* ¶¶ 130, 132–33, #313–14 (claiming Defendants had a conflict of interest that rendered the closure of WSMEX improper)). The same is true of the unjust enrichment and conversion claims: either Defendants retained WSMEX's assets unjustly and converted property to which they did not hold title because they were not properly authorized to do so by WSMEX's board and shareholders, or they did not. (*Id.* ¶¶ 145–46, 150–52, 158–59, #315–16). Intent plays no role—as evidenced by the fact that the only allegation referring to "wrongful" behavior defines "wrongful" by reference to a breach of WSMEX's by-laws and a violation of Mexican corporate law, rather than Defendants' motivations. (*Id.* ¶ 159, #316). The lack of allegations turning on Defendants' scienter means Martinez-Porte's arguments based on the location of evidence necessary to prove such intent are not well taken. In short, the evidence he identified as residing in the United States likely is not relevant to his actual claims.

Finally, turn to Martinez-Porte's last contention that he needs evidence located in the United States to prove the quantum of damages he suffered because of Defendants' actions. The Court struggles to see how this argument makes it out of the gate. Normally, plaintiffs have competent evidence of their own quantum of damages. And to the extent that Martinez-Porte's injuries are tied to his ouster, the shuttering of WSMEX, or the valuation of its assets—whether equipment, client accounts, or cash or cash equivalents—that were allegedly taken by Defendants,

documentation valuing all that was appropriated would be retained in Mexico with WSMEX's other corporate documents, for the reasons highlighted above.[11] (Doc. 10-5, #333, 341; Doc, 12-14, #659, 667). Simply, Martinez-Porte has failed to explain why the Court should ignore the obvious and conclude that documentation of damages Martinez-Porte—a Mexican citizen—suffered is located here rather than in Mexico.

As a result, the Court is not persuaded that the relevant evidence is located predominantly stateside.

As for Martinez-Porte's last contention regarding the purported procedural difficulties of litigating in Mexican courts, the Court is similarly unpersuaded. Other than provide an exhaustive summary of the "more taxing process for compelling discovery" in Mexico, Martinez-Porte "do[es] not allege, much less show, that any witness is unwilling to testify, and that compulsory process is therefore needed."[12]

---

[11] Martinez-Porte makes much of one of Defendants' theories for their defense as to why they were justified in closing WSMEX—that it was unprofitable and at risk of losing its biggest client, Driscoll's. (Doc. 13, #714). But that Defendants intend to defend using this explanation for its actions cannot explain why Martinez-Porte thinks the evidence about the monetary value of the loss of this client account would be here rather than in Mexico. After all, Martinez-Porte is the one who alleged that Defendants transferred WSMEX's equipment to MCM so the latter could handle Driscoll's client account and fulfill its orders. (Doc. 10 ¶ 113(d), #310–11. And it is also Martinez-Porte who alleged that Defendants "transferred WSMEX's clients [or client accounts] to Multi-Color Mexico" some ten times in his Amended Complaint. (*Id.* ¶¶ 87(h), 95, 104(a)–(b), 106(a)–(c), 109, 133, 158, #302, 303–04, 306–07, 308, 309, 314, 316). As MCM is a Mexican company, claiming that the documents related to WSMEX's poached clients currently in MCM's possession are located anywhere but Mexico is borderline frivolous. "There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." *S. Bertram, Inc. v. Citizens Ins. Co. of Am.*, 657 F. App'x 477, 478 (6th Cir. 2016) (quoting *In re Sorah*, 163 F.3d 397, 401 (6th Cir. 1998)). And as a case that "look[s], walk[s], and quack[s]" like a Mexico-centric lawsuit, the evidence unsurprisingly is largely found in Mexico. *Id.*

[12] Furthermore, Defendants represented to the Court at oral argument that they will work with Martinez-Porte to obtain any evidence here in the United States that is necessary to prosecute this suit abroad, thereby ameliorating any of his concerns about the difficulties of using Mexican procedural mechanisms—to the extent that they exist—to acquire evidence.

*Hefferan*, 828 F.3d at 499. As another court explained in rejecting the "comparative ease of obtaining evidence in the United States [relative to] Mexico" as a reason to conclude that private factors supported domestic litigation, "discrepancies in discovery procedures are immaterial to the *forum non conveniens* analysis." *Instituto II*, 29 F.4th at 360. Simply, the alleged procedural difficulties that the parties might— but not necessarily will—encounter in Mexico do not move the needle in suggesting that the parties are better served litigating here in Ohio. Put differently, they cannot outweigh the fact that this is a Mexican corporate dispute with relevant evidence predominantly in Mexico.

So the Court concludes that the private factors regarding the ease of litigating here in the United States as compared to abroad in Mexico favors proceedings where both Martinez-Porte and WSMEX call home—Mexico.

### 2.    Public Factors

Next, turn to the public interest factors, which assess "local interest in the dispute, the location of the injury, the fullness of the court's docket, preference for trying cases in the place of the governing law, hesitance to apply foreign law, and desire to avoid conflict-of-law problems." *Prevent USA*, 17 F.3d at 660.

Again, there is no question that the public factors favor litigation in Mexico. Although it is exhaustively detailed above, it bears repeating: this case is a corporate dispute between the shareholders of a Mexican company and its former president, which resulted in his ouster and physical removal from its location as well as the allegedly unlawful shuttering of that company's Mexican facilities. Local interests

significantly outweigh any interest Ohio has in letting the litigation proceed in this forum. *See Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986) ("[T]he country where the injury occurred has a greater interest in the ensuing … litigation than the country where the [alleged source of the harm] was [purportedly] manufactured."). And jurors here in Ohio would have no meaningful connection to this foreign dispute—either as to the language employed in the corporate documents or as to the events giving rise to Martinez-Porte's cause of action. *Prevent USA*, 17 F.4th at 660; *Stalinski*, 41 F. Supp. 2d at 764 (holding that the application of "the law of a foreign nation … [and the] need to obtain experts on [that foreign] law to assist with this process" justified dismissal). Like the other factors analyzed thus far, these factors show that Mexico is the proper home for this Mexico-centric dispute.[13]

Again, Martinez-Porte disputes this analysis by contending that there are backlogs in Mexican courts and by claiming that Ohio law will necessarily be applied because Multi-Color is headquartered in Ohio and because he raised Ohio law claims in his complaint. (Doc. 13, #716–17). As to his assertion about backlogs in Mexico, which he reiterated at oral argument, the potential administrative delay in his ability to obtain a resolution in this dispute is insufficient to overcome Mexico's significantly stronger interest in a dispute local to Mexico, not the United States. *Instituto II*, 29

---

[13] It is rather telling that at several points during the oral argument when the Court asked for more information about Mexican law and its process, Martinez-Porte's counsel confessed a lack of knowledge because he was not a Mexican attorney. That a party's own counsel cannot definitively answer the Court's questions about the foreign law the Court is asked to apply under the complaint further bolsters the Court's conclusion that the public's interests are best served by having this suit prosecuted in Mexico, not in the United States.

F.4th at 360–61 ("[D]espite [plaintiff's Mexican law expert's] assertion [that] American courts have one-third the caseload burden of Mexican courts, we cannot say the district court abused its discretion in concluding the administrative burdens [in their entirety] are comparatively less significant in Mexico. This is particularly true given that the volume of evidence and witnesses likely resides in Mexico.").

And with respect to Martinez-Porte's argument about Multi-Color's domicile and his Ohio law claims, two observations explain why this contention lacks merit.

First, that one of the defendants is domiciled in Ohio cannot metaphysically convert what is clearly a Mexican corporate dispute into an Ohio-centric cause of action. *Id.* ("[W]hile we accept the United States has some interest in malfeasance by its citizens abroad," "we are unconvinced an alleged scheme involving … a company located in Mexico, bribing 'Mexican agents,' to enable them to sell medical devices in Mexico, to be used by Mexican doctors in Mexican hospitals on Mexican patients, through an agency of the Mexican government, pursuant to contracts executed in Mexico, presents a 'local controversy' to Warsaw, Indiana, regardless where it was orchestrated."); *cf. Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 711 (N.D. Ohio 2006) ("Although one of the Plaintiffs here is an Ohio entity, in reality this is a[n employment] dispute between a French corporation and its former employee, now a Swiss resident" about whether the latter gave the proper amount of notice for his resignation, which "do[es] not weigh in favor of litigating the matter in" Ohio.). Second, it is easy to claim, as Martinez-Porte does, that Ohio law necessarily applies to Martinez-Porte's claims. But it is significantly harder legally to justify that position

in light of the intractable conflict-of-law knot presented by the parties. *See supra* note 5; *see generally Jones*, 920 F.3d at 1093 ("Conflict of laws is a complicated doctrine."). As the Supreme Court has reiterated more than once, "the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper Aircraft*, 454 U.S. at 251 (quoting *Gilbert*, 330 U.S. at 509). Thus, it is not enough for Martinez-Porte to rest on Multi-Color's domicile and the assertion that he raises two common-law claims. This cannot overcome the clear public interest Mexico has in overseeing litigation of a Mexican dispute in Mexican courts, let alone the administrative efficiencies gained by a suit filed near where the events giving rise to Martinez-Porte's claims transpired.

So the Court concludes that the public-interest factors also militate in favor of litigation in a foreign forum rather than here in Ohio.

## C. Proper Amount of Deference to Plaintiff's Forum

Finally, the Court turns to whether Martinez-Porte's choice in forum should be given weight in this analysis. Deference accorded to the choice of forum is evaluated based on a "sliding convenience scale." *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 619 (6th Cir. 2018) (citation omitted). That is to say, "[a]s the amount of deference owed increases, the strength of the showing necessary to overcome that deference necessarily increases as well." *Id.* The question of what amount is proper is intertwined with the strength of "a plaintiff's ties to the United States." *Id.* "When the plaintiff is foreign … th[e] assumption [that the choice of forum is born out of convenience] is much less reasonable … [and] deserves less deference"

26

given "citizenship and residence are proxies for convenience." *Piper Aircraft*, 454 U.S. at 256 & n.24. Certainly, a foreign plaintiff can identify "a legitimate reason" for his filing in American courts to obtain greater deference, "such as … the ability to obtain jurisdiction over the defendants rather than tactical advantage." *Hefferan*, 828 F.3d at 494. But even if such a justification is identified, the "presumption of convenience applies with less force" for foreign plaintiffs. *Stryker*, 891 F.3d at 619.

As detailed throughout this opinion, beyond Martinez-Porte's lack of a personal connection to this forum, the requisite nexus between the facts giving rise to his suit and the forum is also lacking. This is a Mexican dispute involving a Mexican corporation and its shareholders with the impact centered in Mexico. So Martinez-Porte's choice of a domestic forum carries little to no weight in the Court's analysis as it is unreasonable—given the nature of the dispute—to presume the choice was motivated by convenience. *Jones*, 920 F.3d at 1095 ("[T]here is strong evidence that Jones is not at home in the United States. So the assumption that a United States court is most convenient for him does not hold true.").

Martinez-Porte contends that minimal deference is improper because he has identified legitimate reasons for bringing his suit in this district. (Doc. 13, #710). But his proposed "legitimate reasons" simply rehash his arguments rejected above regarding his claim that most of the relevant evidence and witnesses are present here in Ohio, not in Mexico.[14] (*Id.* at #710–11). The Court remains unpersuaded for the

---

[14] And because the Court orders Defendants to submit to the jurisdiction of the Mexican court where this suit is refiled, Martinez-Porte's argument that he has a legitimate reason for filing in Ohio because "this Court has jurisdiction over them" does not require the Court to accord his choice in forum more than minimal deference. (Doc. 13, #710).

reasons stated above—this case is about a corporate dispute in Mexico. It matters not that Defendants allegedly might have directed from elsewhere some of the acts Martinez-Porte claims injured him. *Hefferan*, 828 F.3d at 498; *Instituto II*, 29 F.4th at 360–61.

Accordingly, the Court gives minimal deference to Martinez-Porte's choice in forum and finds that it does not meaningfully weigh against dismissal under the doctrine of forum non conveniens.

## CONCLUSION

Altogether, all forum non conveniens factors support dismissal and having this dispute proceed in Mexico. This is a Mexican corporate dispute involving Mexican law with all relevant events and alleged injuries occurring in Mexico. Litigation in the United States would serve no one's interest. The Court therefore **GRANTS** Defendants' Motion to Dismiss (Doc. 12) and **DISMISSES WITHOUT PREJUDICE** Martinez-Porte's Amended Complaint (Doc. 10). In addition, the Court **ORDERS** Defendants Multi-Color Corporation and W/S Packaging Group, Inc., to consent to jurisdiction in Mexico, and to accept service of process in Mexico regarding this matter. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

November 1, 2023
**DATE**

DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE

28